UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 22-cr--239 (RBW) |
| | ) | |
| Paul Kovacik, *defendant*. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on June 21, 2023 at 2 o'clock p.m. EST when he appears by videoteleconference (VTC) before the Court for his sentencing hearing.

1. The defendant was charged by complaint in 22-mj-100 (RMM) on May 10, 2022. He was arrested on June 19, 2022, and presented on June 24, 2022, in the U.S. District Court for the Southern District of Indiana (Evansville Division) in case 22-mj-0089 (MPB). The court released the defendant on his own recognizance and ordered him to appear remotely by teleconference at a hearing in this Court on June 28, 2022 before Mag. Judge Zia M. Faruqui.[1] He was charged with four misdemeanor offenses resulting from his presence in the Capitol during the protests and riot of January 6, 2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5104(e)(2)(G) ("Demonstrating"). He was released on his own recognizance on

---

[1] This information derived from the Rule 5 documents found in ECF Doc. 7.

conditions that were nearly identical to those imposed when, on July 28, 2022, he appeared before Judge Faruqui. (ECF Doc. 9)  On July 10, 2023, the government filed a criminal Information reiterating the charges that appeared in the Complaint. (ECF Doc. 10)  He was arraigned by this Court on the criminal Information in the instant case on September 28, 2022, at which time he entered a plea of not guilty to all charges.  Since his release, the defendant has complied with the conditions that were first imposed in Indiana on June 24  2022, then here four days later.

      2. After negotiations with the government, in which the parties shared a good deal of information, the defendant entered a plea of guilty on March 13, 2023, before this Court to Count Four on a theory of, and admission, to Demonstrating, in violation of 40 U.S. §5104(e)(2)(G). He did so at the earliest time possible.[2] The remaining charges will be dismissed by the government at sentencing, per the terms of the Plea Agreement.  Demonstrating is a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment.  As a petty offense, the U.S. Sentencing Guidelines do not apply. (Presentence Investigation Report ("PSI"), ¶27) The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairing damage to the U.S. Capitol, repairs which were necessary after the riot.

      4.  Counsel has reviewed the Draft and Final PSIs, which he has provided to the defendant for his review.  No objections  have been lodged contesting the accuracy of the information, either legal or factual, in the PSI. .

---

[2] The defendant accepted the plea offer the government made in the most timely manner, though the plea hearing itself was delayed when technical difficulties caused the Court to abort the Feb. 3, 2023 hearing and reschedule it for March 13, 2023, when the Court was able to complete the Rule 11 colloquy and accept the defendant's plea of guilty.

5. The defendant came to Washington in two roles: both as a partisan who was disappointed with the result of the 2020 presidential election and as an observer who was interested in recording the events of the day. Before he came here, he had no inkling – few did – that there would be a violent breach of the Capitol by others, nor once here did he participate in that breach. Rather, he followed the crowd of protestors, whose views he shared, and entered the Capitol. He had wanted to see President Trump speak before he left office, and the defendant adorned himself in a "Trump 2020" sweatshirt to show his support. He appears to have walked mostly unhindered through different parts of the building, which may have given him a false sense that this was permitted. He did not commit acts of violence against persons or property, though he did film at least one such act, in which another person, Zachary Alam, threw an object from a balcony toward officers below. (Government's Sentencing Memorandum, Doc. 32, pages 3-4) . Though the defendant sided with those who were protesting inside the building, it does not appear that he took part in chants, shouted slurs against political leaders, or encouraged others to commit acts of violence. The evidence seems to suggest that the defendant did not appreciate the seriousness of his conduct nor how his presence made it more difficult for the police to quell the disturbance and dispel rioters from the building. There's also no evidence that the defendant confronted or challenged the police while he was in the building.[3]

7. The defendant has an ample criminal history, and it is amply cataloged in the PSI. (ECF Doc. 30, ¶¶21-84), both convictions and arrests that did not lead to convictions. The convictions, all misdemeanors, evidence a lack of self-control and support the government's

---

[3] The government points out, however, that the defendant was "corralled by a plainclothes security officer into the Statuary Hall connector where a large crowd of rioters had massed. The crowd soon pushed past the officers, spilling out into the House corridor. Kovacik moved with the surge, continuing east, entering the Sam Rayburn room for approximately one minute." (Doc. 32, page 5)

contention that it reveals a lack of respect for authority. Interestingly, it begins when the defendant, who is now in his mid-fifties, was already twenty-eight years old, not a teen or even a young adult. One has to wonder why, at that late stage and with no juvenile record, the defendant began to act as he did.

8. As to the charge of Demonstrating, to which the defendant pled guilty, it's important to note that such activity is not illegal *per se*, and in fact is protected by the 1st Amendment, but it may be limited, as it was here, as to time or place. The Capitol was closed to the public that day for a compelling reason: so the Congress could receive the votes of the electoral college and certify the victor of the recent presidential election.[4] Many defendants in these cases, the defendant probably one of them, had a misplaced, mistaken[5] sense that the 1st Amendment protects speech no matter where it is made. That, of course, is not correct, as it can be circumscribed as to time and place. The defendant did interfere with that process, and added to the difficulties of officers who already had their hands full, charged with keeping order in what was first disorder, chaos, and spasmodic violence. Since his arrest, the defendant has cooperated with investigators, and made available the video record he produced of the day. He does not approve of violent conduct, and it was his hope that the materials he provided could be used to identify persons who committed such acts.

9. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than

---

[4] One who is admitted lawfully by entering through the Visitor's Entrance on the East Side of the Capitol on days the Capitol is open to the public are not allowed to demonstrate, parade or picket. The *place* of the conduct makes the activity illegal.

[5] The U.S. Capitol Police issue permits to those who wish to protest or demonstrate on Capitol grounds, but no such permit would allow demonstrations inside the building itself. *See* https://www.uscp.gov/visiting-capitol-hill/activities-requiring-permits, allowing rallies, vigils, and other group activities.

necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

10.  The Court can see from the PSI that the defendant has experienced much difficulty in his life.  He himself attributes some of his problems to his intellectual abilities; as a youth, he was placed in special education classes, and believes that he may be autistic or suffer from Asperger's syndrome,  though he has not been diagnosed with them.   He told the presentence writer that when he was in school in the 70s and 80s, "there was no such thing" as identifying or diagnosis for such conditions. (ECF Doc. 30, ¶91)

11. The Court must avoid "unwarranted sentencing disparities."  The government cites the cases of *United States v. Robert Packer,* 21-cr-103 (CJN) and *United States v. Matthew Webler,* 21-cr-741 (DLF), as they involve other defendants who, like the defendant, had extensive criminal records.[6]  Mr. Packer received a 45-day sentence, Mr. Webler 75 days. (ECF Doc. 32, pages 17-18)  The latter had two convictions for aggravated assaults and was on supervision on January 6 when he committed the act of Demonstrating.  The defendant contends that these cases undercut the government's selection of 90 days as an appropriate sentence for the defendant.  In

---

[6] Mr. Packer had a conviction for forgery, though the government's memo does not indicate if this was a felony or misdemeanor offense.

this case, the defendant was not under supervision on January 6, cooperated with investigators following his arrest, and made available his video record. The Court can also take into account its impression of the defendant that it (the Court) obtained in the extensive Rule 11 colloquy. The defendant seemed to lack a full appreciation of his criminal conduct, even though he took responsibility for it: the colloquy included direct questioning of the defendant by the government (with no objection from counsel to that unorthodox request), followed by extensive questioning by the Court. By the end of the colloquy, the defendant fully understood how his conduct constituted Demonstrating in violation of the law. He then entered his guilty plea knowingly and voluntarily. This seems to set the defendant apart from many of those who participated in the Capitol breach and riot.

    11. The defendant submits that a period of incarceration of no more than forty-five (45) days, that which was imposed in the Webler case, would be sufficient, followed by a period of probation would be an appropriate sentence in the circumstances. Many defendants in January 6 cases receive probation as a component of their sentences so the Court can monitor them, not because they necessarily need the services U.S. Probation can provide. Probation also means that an infraction may result in revocation, exposing them to further incarceration if they've received less than the maximum period as punishment. In this case, the defendant can truly benefit from the services that the probation offers, apart from making it less likely that the defendant will commit offenses – similar to this one or otherwise. Such a sentence would satisfy the "need for the sentence…to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense."

12. For all the reasons noted above, the defendant respectfully requests a sentence of no more than 45 days and a period of probation that the Court believes is appropriate and warranted.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Douglas Meisel, Esq., Trial Attorney (Detailee), USAO-DC, this 19th day of June, 2023.

/s/
_____
*Nathan I. Silver, II*